IN THE UNITED STATES DISTRICT COUR0T
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| NATHAN TOCCO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  No. 3:07-CV-118 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the Court for review of the Commissioner of Social Security's decision denying Disability Insurance Benefits to Plaintiff, Nathan E. Tocco. For the reasons set forth below, the Commissioner of Social Security's final decision is **AFFIRMED**.

BACKGROUND

On July 27, 2004, Plaintiff, Nathan E. Tocco ("Tocco"), applied for Social Security Disability Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. section 401 et seq. Tocco alleges that he began having seizures shortly after his first birthday, and alleges disability under the Social Security Act since April 1, 1998. The Social Security Administration denied his initial application and also denied his claim on reconsideration. On July 21, 2006, Plaintiff

appeared with counsel at an administrative hearing before Administrative Law Judge ("ALJ") Stephen Davis. Testimony was provided by Plaintiff and Kim Tocco (Plaintiff's mother). On September 26, 2006, ALJ Davis denied Plaintiff's DIB claim, finding that, during the period from April 1, 1998 (Tocco's alleged onset date) to September 26, 2006 (the date of the ALJ's decision), Tocco had not been under a "disability" as defined in the Social Security Act.

Plaintiff requested that the Appeals Council review the ALJ's decision. This request was denied. Accordingly, the ALJ's decision became the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a) (2005). Plaintiff has initiated the instant action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. section 405(g).

DISCUSSION

Facts

Tocco was born on June 21, 1978. (Tr. 319). Tocco alleges the following impairments: tuberous sclerosis[1], a seizure disorder which

---

[1] Tuberous sclerosis is a rare genetic disease that causes benign tumors to grow in the brain and other vital organs. (Tr. 278). It commonly affects the central nervous system and results in a combination of symptoms including seizures, developmental delay, behavioral problems, skin abnormalities, and kidney disease. (Tr. 278-279). Symptoms range from mild to severe. (*Id.*).

stems from the tuberous sclerosis, and a borderline range of intelligence which also is considered an effect of tuberous sclerosis. (Tr. 317-19). Tocco alleges that he has been disabled since April 1, 1998, when he determined that he was unable to work in excess of fifteen hours per week due to an increase in the frequency of seizures associated with his working more than fifteen hours per week. (Tr. 51, 318). Tocco obtained his high school diploma, but has no past relevant work experience. (Tr. 29, 322).

The medical evidence can be summarized as follows:

Tocco has a long history of seizures dating back to his first birthday. (Tr. 323). Records of Tocco's treating physician, Dr. Larry R. Lett ("Dr. Lett"), repeatedly indicate that Tocco is diagnosed with tuberous sclerosis, although from the evidence before the ALJ, it is unclear exactly what medical evidence Dr. Lett relied upon in making this diagnosis. (Tr. 211-237). Dr. Lett monitored and treated Tocco for his seizure disorder from at least June 1997. (Tr. 237). During Dr. Lett's time monitoring Tocco's condition, Tocco reported that he experienced varying frequencies of seizures. (Tr. 211-237). Between approximately November 1997 through November 1998 and February 2001 through April 2004, Lett reported that Tocco had experienced no seizures or only minor spells. (Tr. 211, 212, 214, 216, 232). Further, it seems the regimen of medications to control Tocco's susceptibility to seizures was working well with no reported side effects. (Tr. 220). Dr. Lett believed Tocco was able to

operate a motor vehicle because of the success of his regimen of medications. (Tr. 220, 232).

Though the medical reports submitted by Dr. Lett evidence an aggregate control over Tocco's seizure disorder, there are reported examples of seizures in the record. In office notes from February 22, 2001, April 4, 2000, December 14, 1999, and October 16, 1997, Dr. Lett reported that Tocco had experienced numerous minor seizure events as well as one "grand mal" seizure as a result of the combination of missing his medication, missing sleep while traveling, and a general sickness while on vacation. (Tr. 216, 224-25, 228, 236). Dr. Lett stated in office notes dated January 3, 2006, that approximately every six to eight weeks Tocco will have a lapse in awareness before bed or in the early morning if he did not obtain adequate sleep the previous night. (Tr. 284).

In a letter submitted shortly before Tocco's administrative hearing, Dr. Lett wrote the following:

> ...As you know, Nathan has a history of hereditary tuberous sclerosis, which has manifest in him, as having very frequent seizures, manifest by partial complex and grand mal seizures. Despite numerous medications, his seizure disorder has been refractory, and it has been necessary to limit the hours that he works per week.
>
> As we covered in the previous letter of February 17, 2005, I believe the patient should work a maximum of 15 hours per week. Previously, we have noted that when he tried to increase his work hours, more than 15 hours per week, he would continue to have frequent seizures. However, when he works 15 hours, or less, his seizures

> have been under much better control.
>
> Thus, from a medical perspective, I feel that it is reasonable that Nathan Tocco should be working a maximum of 15 hours per week.

(Tr. 334). Dr. Lett voiced his opinions similarly in a letter dated February 17, 2005.[2] (Tr. 286).

In addition to a seizure disorder, Tocco was found to function in the borderline range of intelligence based upon the results of a standardized intelligence test, the Wechsler Adult Inventory Scale, performed on November 3, 2004. (Tr. 190-196). According to the results of the examination performed by Dr. Alfred Barrow, a psychologist who conducted a clinical interview and administered the Wechsler Adult Intelligence Scale - III, Tocco is functioning in the borderline range of intelligence in his verbal ability, performance skills, and overall assessment. (Tr. 195). Dr. Barrow concluded that Tocco would only be capable of competitive employment in a highly structured and routine environment. (Tr. 195).

Dr. Montoya reviewed the evidence in December 2004 and found no exertional or non-exertional limitations except avoiding all exposure to hazards. (Tr. 178-185). Dr. Dobson, in February 2005, reached the same conclusion. (Tr. 178-185).

Dr. Shipley, a psychologist, reviewed the record in December 2004

---

[2]This letter appears in the record as evidence that was submitted to the appeals council post-hearing. (Tr. at 283, 286). However, ALJ Davis apparently had this letter available to him prior to his decision being issued, as his decision makes reference to this letter.

and concluded that the claimant is capable of working if limited to simple, repetitive tasks. (Tr. 154-177, 186-189). Dr. Pressner, a psychologist, concurred with this opinion after reviewing the record in February 2005. (Tr. 154-177, 186-89).

After the ALJ issued his decision, Tocco's Attorney submitted additional medical evidence to the Appeals Council. This evidence included a letter from Dr. Lett dated December 18, 2006, referencing the ALJ's decision, clarifying that the diagnosis of tuberous sclerosis was made by physicians at Mayo Clinic in Rochester, Minnesota, and further explaining the reasons he believes a diagnosis of tuberous sclerosis is appropriate for Tocco. (Tr. 299-300). Post-hearing evidence also included the report from an EMI scan of Tocco's brain performed on March 26, 1980 which suggesting a diagnosis of tuberous sclerosis, and the report of Dr. Glenn J. Bingle dated July 9, 1980 in which Dr. Bingle opines that Tocco has tuberose sclerosis. (Tr. 274-275).

Review of Commissioner's Decision

This Court has authority to review the Commissioner's decision to deny social security benefits. 42 U.S.C. § 405(g). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." *Id.* Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a decision." *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971). In determining whether substantial evidence exists, the Court shall examine the record in its entirety, but shall not substitute its own opinion for the ALJ's by reconsidering the facts or re-weighing evidence. *Jens v. Barnhart*, 347, F.3d 209, 212 (7th Cir. 2003). With that in mind, however, this Court reviews the ALJ's findings of law de novo and if the ALJ makes an error of law, the Court may reverse without regard to the volume of evidence in support of the factual findings. *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999).

As a threshold matter, for a claimant to be eligible for DIB under the Social Security Act, the claimant must establish that he is disabled. To qualify as disabled, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382(a)(1). To determine whether a claimant has satisfied this statutory definition, the ALJ performs a five step evaluation:

Step 1:  Is the claimant performing substantial gainful activity: If yes, the claim is disallowed; if no, the inquiry proceeds to Step 2.

Step 2:  Is the claimant's impairment or combination of impairments "severe" and expected to last at least twelve months? If not, the claim is disallowed; if yes, the inquiry proceeds to Step 3.

Step 3:  Does the claimant have an impairment or combination of

>    impairments that meets or equals the severity of an impairment in the SSA's Listing of Impairments, as described in 20 C.F.R. § 404, Subpt. P, App. 1? If yes, then claimant is automatically disabled; if not, then the inquiry proceeds to Step 4.

Step 4: Is the claimant able to perform his past relevant work? If yes, the claim is denied; if no, the inquiry proceeds to Step 5, where the burden of proof shifts to the Commissioner.

Step 5: Is the claimant able to perform any other work within his residual functional capacity in the national economy: If yes, the claim is denied; if no, the claimant is disabled.

20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Herron v. Shalala*, 19 F.3d 329, 333 n. 8 (7th Cir. 1994).

In this case the ALJ found that the medical evidence established that Tocco has a severe impairment; namely, borderline intelligence functioning and a seizure disorder. (Tr. 29). The ALJ further found that Tocco's combination of impairments did not meet or medically equal one of the listed impairments. (Tr. 29). The ALJ also found that Tocco has no past relevant work, but nonetheless could perform simple, repetitive tasks akin to unskilled work at all levels of exertion in an environment free of hazards. (Tr. 29). Thus, Tocco's claim failed at Step 5 of the evaluation process. (Tr. 30). Tocco believes that the ALJ committed several errors requiring reversal, each of which will be addressed in turn.

<u>The Weight Given to Tocco's Treating Physician's Opinions</u>

Social Security Ruling ("SSR") 96-2p provides that a treating physician's medical opinion must be given controlling weight if it is

"well supported and not inconsistent with other substantial evidence in the case record." Furthermore, SSR 96-2p requires that the ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. Additionally, 20 C.F.R. § 404.1527(d)(2) establishes six criteria that should be evaluated when determining the weight that should be given to a treating physician's medical opinions. See *Butera v. Apfel*, 173 F.3d 1049, 1056 (7th Cir. 1999). The six criteria are:

1) the nature and extent of the treatment relationship;
2) the degree to which the medical signs and laboratory findings support the opinion;
3) the degree to which the opinion takes into account all of the pertinent evidence in the record;
4) the persuasiveness of the opinion rendered;
5) the consistency of the opinion with the record as a whole;
6) the specialization of the physician.

20 C.F.R. § 404.1527(d)(2).

Dr. Lett is a neurological specialist and has seen Tocco in his office multiple times since 1997. (Tr. 216-237). That Dr. Lett is a treating physician within the meaning of SSR 96-2p is not disputed. Dr. Lett opined that Tocco's seizure disorder stemmed from tuberous sclerosis and that Tocco should not work more than 15 hours per week. (Tr. 26, 286, 334). The ALJ acknowledged Dr. Lett's opinion on these matters, yet did not give them controlling weight. (Tr. 26).

Although he disregarded Dr. Lett's diagnosis of tuberous sclerosis,

the ALJ provided specific reasons for finding that Dr. Lett's diagnosis of tuberous sclerosis was "not well supported by objective medical evidence" and "inconsistent with substantial other evidence." (Tr. 26). The ALJ noted "None of the laboratory test results in the record point in the direction of tubular sclerosis or support the claimant's allegation of seizures." (Tr. 26). The ALJ further noted that Dr. Lett also diagnosed Tocco with primary generalized epilepsy which would conflict with a diagnosis of tuberous sclerosis, as it suggests a different etiology. (Tr. 26, 268). Although, at this juncture, the record contains other medical evidence supporting a diagnosis of tuberous sclerosis, that evidence was not submitted until after the ALJ issued his opinion. (Tr. 273-75). Therefore, the ALJ's decision not to give controlling weight to Dr. Lett's diagnosis of tuberous sclerosis is not reversible error. And, even if the evidence had been submitted previously and the ALJ had accepted Dr. Lett's diagnosis of tuberous sclerosis, assigning a particular label to Tocco's impairment it would not have had any influence on the result, given the ALJ's evaluation of Dr. Lett's opinion regarding Tocco's ability to work only fifteen hours per week, as discussed below.

As previously noted, the ALJ did not give controlling weight to Dr. Lett's opinion regarding Tocco's limitations in regards to the number of hours he was capable of working. (Tr. 26). As the ALJ noted, Dr. Lett has reported that Tocco has been seizure free for considerable spans of time. (Tr. 27, 211-216, 232). The determination of Dr. Lett

on November 12, 1998, shortly after Tocco claims his disability began, was that Tocco was "doing well" and has "not [experienced] even any 'minor' type of spells in over one year" and has "gone a long period of time being seizure free." (Tr. 232). Further, both Dr. Lett and Tocco's mother indicate that Tocco is primarily seizure free except for when he is awaking in the morning or after a nap. (Tr. 27, 236, 330-331).

The ALJ also noted that the Plaintiff's medical signs similarly pointed to the conclusion that his symptoms are mostly under control. Plaintiff's gait and station are normal, he experiences no involuntary movements, and the symptoms of his seizure are relatively benign, consisting of Tocco losing awareness for a time period lasting only seconds. (Tr. 27, 212-216). The only medical evidence provided by Dr. Lett that the Plaintiff was experiencing any increase in his seizure activity was during a family vacation in 2000 in which Tocco was sick and suffering from a lack of sleep. (Tr. 27, 224).

The ALJ also examined the opinions of Dr. Montoya and Dr. Dobson which separately concluded the claimant has no exertional or non-exertional limitations except for avoiding all exposure to hazards. (Tr. 27, 178-85). Additionally, the ALJ considered the opinions of two psychologists, Dr. Shipley and Dr. Pressner, who each believed after reviewing the record that the claimant is capable of working if limited to simple, repetitive tasks. (Tr. 154-177, 186-189). Furthermore, the ALJ considered the opinion of Dr. Barrow that Tocco would only be

capable of competitive employment in a highly structured and routine environment. (Tr. 195).

In conclusion, the ALJ's decision provided specific reasons for not crediting the treating physician's opinion, supported by evidence in the case record, and sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to Dr. Lett's opinion and the reasons for that weight. Since ALJ Davis supported his decision to discredit Dr. Lett's opinion regarding Tocco's inability to work in excess of 15 hours per week with substantial evidence, that decision is conclusive.

Severity of Impairments

Tocco further argues that the ALJ erred by failing to determine that all of his various impairments were "severe" at Step 2 in the ALJ's determination. The government contends that since the ALJ found the plaintiff had "severe' impairments, specifically a seizure disorder and borderline intellectual functioning, that the ALJ's failure to find tuberous sclerosis was a "severe" impairment for purposes of the inquiry is hardly reversible error. *See Maziarz v. Secretary of Health & Human Services,* 837 F.2d 240, 244 (6th Cir. 1987)(holding that where the Secretary finds that at least one impairment is severe and continues with the remaining steps in the process, the failure to find a particular impairment is severe could not constitute reversible error). This Court agrees with the Government. Although ALJ Davis discredited

Lett's diagnosis of tuberous sclerosis, the analysis nonetheless proceeded through steps three, four and five of the sequential analysis, and each of Tocco's impairments, whether linked to tuberous sclerosis or not, were considered by the ALJ.

Requirement to Recontact Dr. Lett

The Plaintiff alleges that the ALJ erred as a matter of law when he failed to recontact Dr. Lett regarding his medical opinion. SSR 96-5p states:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make every reasonable effort to recontact the source for clarification of the reasons for the opinion.

An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable. "[I]n some instances, additional development [is] required by a case – for example, to obtain more evidence or to clarify reported clinical signs or laboratory findings – may provide the requisite support for a treating source's medical opinion that at first appeared to be lacking or may reconcile what at first appeared to be an inconsistency between a treating source's medical opinion and the other substantial evidence in the case record." SSR 96-2p at 4.

SSR 96-5p would require the ALJ to recontact Dr. Lett if there was a lack of information that prevented him from determining the basis for

Dr. Lett's opinion, yet that is not the case here.  The ALJ had before him numerous reports by Dr. Lett outlining Tocco's symptoms for a span of years.  (Tr. 216-268).  Included in these reports were reports on Tocco's general health over Dr. Lett's time treating Tocco.  (Tr. 232). The ALJ also had before him reports from two other physicians and three psychologists separately concluded that Tocco's only work limitations were avoiding hazardous materials, and limiting his work to simple, repetitive tasks in a structured environment.  (Tr. 27-28).  Therefore, there was not a lack of information which prevented the ALJ from reaching his opinion without further information from Dr. Lett.

Failure to Have a Medical Expert and Vocational Expert at Hearing

In addition to the above arguments, Tocco argues that the ALJ erred in failing to have a medical expert and a vocational expert at the hearing.  Tocco, however, does nothing more than state that this is an error.  This Court declines to make Tocco's arguments for him. *Vaughn v. King*, 167 F.3d 347, 354 (7th Cir. 1999)("It is not the responsibility of this court to make arguments for the parties.").  Accordingly, the argument is deemed waived.

CONCLUSION

For the reasons set forth above, the Commissioner of Social Security's final decision is **AFFIRMED.**

**DATED: November 14, 2008**          /s/RUDY LOZANO, Judge
                                      **United States District Court**